IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GLADYS MARIA TEJADA LIRIANO IN REPRESENTATION OF ERNESTO CRUZ TEJADA,<br><br>Petitioners,<br><br>v.<br><br>REBECCA GONZÁLEZ-RAMOS, ET. AL.,<br><br>Defendants. | CIV. NO.: 26-1142 (SCC) |

**OPINION AND ORDER**

Pending before the Court is Petitioner Ernesto Cruz Tejada's ("Mr. Cruz Tejada") *Petition for Writ of Habeas Corpus*, *Urgent Motion Requesting Order Prohibiting the Transfer of Petitioner from Puerto Rico to Other Jurisdiction and that this Court Conduct a Bond Hearing* (the "*Urgent Motion*"), and *Emergency Motion for Temporary Restraining Order* (the "*TRO*"), by way of his mother, Gladys Maria Tejada Liriano ("Ms. Tejada Liriano"). *See* Docket Nos. 1, 3, 4. For the reasons set forth below, the Court **GRANTS** the *Urgent Motion* and *TRO* and **HOLDS IN ABEYANCE** the *Petition for Writ of Habeas Corpus*. This Court hereby **ORDERS** that the United States,

its agencies, and employees shall not transfer Mr. Cruz Tejada outside of the jurisdiction of Puerto Rico and that he be granted a bond hearing conducted by an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR").

## I. BACKGROUND

Mr. Cruz Tejada, a citizen of the Dominican Republic, entered Puerto Rico without inspection on or about 2003. Docket No. 1, pg. 5; *see also* Docket No. 3, pg. 2. Mr. Cruz Tejada is the sole caregiver of his mother, Ms. Tejada Liriano, who is a Legal Permanent Resident ("LPR"). Docket No. 1, pg. 5. Ms. Tejada Liriano filed an I-130 Form, or "Petition for [Noncitizen] Relative," with the United States Citizenship and Immigration Services ("USCIS") on Mr. Cruz Tejada's behalf. *Id* at pg. 1. The petition was approved. *Id.* On March 7, 2026, Mr. Cruz Tejada was detained during an enforcement operation in Barrio Obrero, Puerto Rico, while on his way to purchase breakfast for his mother. *Id.* at pg. 1. Following his arrest, Mr. Cruz Tejada was first transferred to the Aguadilla Processing Center, and then to General Services Administration ("GSA") in Guaynabo, Puerto Rico, where he remains under custody. *Id.* at pg. 2.

On March 9, 2026, Mr. Cruz Tejada filed a *Writ of Habeas Corpus*. *Id.* Mr. Cruz Tejada alleges that his detention

violates his substantive and procedural due process rights under the Fifth Amendment to the United States Constitution, as well as his access to counsel and conditions of confinement of the same. *Id.* at pgs. 10–13. He also asserts that the decision to detain him was "arbitrary, capricious, an abuse of discretion, absent any arrest warrant and/or reasonable suspicion[n], and otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)." *Id.* at pg. 13. Mr. Cruz Tejada contends that, if afforded a bond hearing, he could demonstrate that he is not a flight risk, presents no danger to the community, and is eligible for Cancellation of Removal under Section 240A(b)(1) of the Immigration and Nationality Act ("INA"). *Id.* at pg. 2. Accordingly, he seeks a TRO prohibiting his transfer out of the District of Puerto Rico until he receives a bond hearing and his petition for writ of habeas corpus is reviewed by the Court. *Id.* at pgs. 13–14. Ultimately, along with granting his habeas corpus petition, Mr. Cruz Tejada asks the Court to award him attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. *Id.*

## II. Standard of Review

Federal Rule of Civil Procedure 65(b) controls this issuance of a TRO, which may be issued *ex parte* and is of limited duration since it may remain in effect for up to 14

days.  *See* Fed. R. Civ. P. 65(b).[1]  However, like a preliminary injunction, a TRO is "an extraordinary and drastic remedy that is never awarded as of right."  *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011).  In order for a court to grant a TRO, a plaintiff "'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest.'"  *Id.* at 9 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).[2]  The movant "bears the burden of establishing that these four factors weigh in its favor."  *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (citing *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)).

---

[1] Rule 65(b)(2) empowers the Court to extend the duration of the TRO "for a like period or [if] the adverse party consents to a longer extension."  *See* Fed. R. Civ. P. 65(b)(2).

[2] Rule 65(c) instructs "the movant [to] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  However, the Court will not order Mr. Cruz Tejada and Ms. Tejada Liriano to do so here.  *See Int'l Assoc. of Machinists and Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir. 1991) (recognizing the existence of "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond").

### III. ANALYSIS

#### a. Likelihood of Success on the Merits

The INA empowers the Government to detain certain noncitizens, either on a mandatory or discretionary basis. Two statutory provisions control this process: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens "who are applicants for admission or otherwise seeking admission" to the United States. *Id.* § 1225(a)(3). Under Section 1225, if a noncitizen is deemed inadmissible "the [noncitizen] shall be detained for a [removal] proceeding under section 1229a." *Id.* § 1225(b)(2)(A).

In contrast, Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodríguez Díaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Noncitizens who are "arrested and detained pending a decision on [their] remov[al]" face three discretionary outcomes as to their detention: the Attorney General "may continue to detain the arrested [noncitizen]"; "release the [noncitizen] on bond of at least $1,500"; or "release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). However, if a noncitizen is involved in specific enumerated criminal activities, their detention is mandatory. *Id.* § 1226(c)(1). Importantly, unlike Section 1225, "noncitizens detained pursuant to 8 U.S.C. §

| TEJADA LIRIANO v. GONZÁLEZ-RAMOS | Page 6 |
|---|---|

1226(a) are entitled to receive a bond hearing." *Brito v. Garland*, 22 F.4th 240, 244 (1st Cir. 2021); *see also Rodríguez Díaz*, 53 F.4th at 1202 (noting that Section 1226(a) provides "extensive procedural protections [such as] an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change.").

Here, Mr. Cruz Tejada entered the country without authorization in 2003, has an approved I-130 petition, and was arrested and detained outside of his residence. Docket No. 1, pgs. 1–2. Given that Section 1226(a) governs the detention of noncitizens who are arrested and detained while residing in the United States, and Mr. Cruz Tejada has not disclosed any criminal record which could otherwise subject him to the mandatory detention exception, at this time, the Court finds that its discretionary detention regime is applicable here.

As noted, Section 1226(a) entitles a noncitizen to an initial bond hearing, during which the Government bears the "burden of proving either dangerousness or flight risk in order to continue detaining [the noncitizen]." *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021). Mr. Cruz Tejada alleges that the Government justifies the detention of immigrants and the denial of their entitlement to a bond hearing pursuant to

a recent Board of Immigration Appeals ("BIA") decision. Docket No. 1, pg. 9 (referencing *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220–28 (BIA 2025) (holding that Immigration Judges lack jurisdiction to consider a bond request filed by noncitizens who are present in the United States without admission)). However, district courts have routinely rejected *Matter of Yajure Hurtado*'s interpretation and upheld the right to a bond hearing under circumstances akin to those of Mr. Cruz Tejada. *See, e.g., Sampiao v. Hyde*, 799 F. Supp. 3d 14, 29 n.11 (D. Mass. 2025); *Elias Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); *Lora-Salazar v. Ripa*, No. 26-CV-1014 (D.P.R. Jan. 13, 2026) (Docket Nos. 5, 13); *Gonzalez-Rucci v. Gonzalez-Ramos*, No. 26-CV-1045 (D.P.R. Jan. 29, 2026) (Docket No. 12). Since Mr. Cruz Tejada has shown that he is entitled to a bond hearing as to his detention, the Court finds that he has demonstrated a strong likelihood of success on the merits.

### b. Irreparable Harm

"[An] injunction should issue only where [it is] essential in order effectually to protect [] rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" harm would be threefold: detention; removal from this Court's

jurisdiction pending the habeas corpus proceedings; and the subsequent consequences that such removal would have on Mr. Cruz Tejada's person and rights. Without a bond hearing, Mr. Cruz Tejada faces a potentially prolonged period of detention, depriving him of his liberty. Mr. Cruz Tejada would likely be transferred to an immigration detention center in the mainland United States, which prompts concern for his constitutional right to access to counsel. Further, Mr. Cruz Tejada would also face a substantial risk of confinement in facilities that raise health, safety, and due process concerns. As such, the Court finds this factor weighs in Mr. Cruz Tejada's favor.

### c. Balance of Equities and Public Interest

The remaining TRO factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The First Circuit has repeatedly held that where, as here, the Government is likely acting contrary to the plain text of federal law, the balance of equities weighs against it. *See New York v. Trump*, 133 F.4th 51, 71 (1st Cir. 2025); *New Jersey v. Trump*, 131 F.4th 27, 40–41 (1st Cir. 2025). Relatedly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." *Rhode Island v. Trump*, 155 F.4th 35, 50 (1st Cir. 2025). In conclusion, the Court finds that the remaining factors also weigh in Mr.

Cruz Tejada's favor.

## IV. CONCLUSION

In sum, this Court **GRANTS** the *Urgent Motion* and *TRO* and **HOLDS IN ABEYANCE** the *Petition for Writ of Habeas Corpus*. This Court **ORDERS** that the Government shall not transfer Mr. Cruz Tejada outside of Puerto Rico and that he be granted a bond hearing before an Immigration Judge no later than March 24, 2026. The Government shall inform by March 25, 2026 whether such bond hearing has been held and its outcome. This Order grants only temporary injunctive relief and does not adjudicate the merits of the *Petition for Writ of Habeas Corpus*.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of March 2026.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE